AF Approval _______ Chief Approval _______

FILED
2017 FEB 23 PM 3:01
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 2:17-CR-15-FtM-99MRM

CASEY PADULA

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and Caroline D. Ciraolo, Principal Deputy Assistant Attorney General for the U.S. Department of Justice, Tax Division, and the defendant, CASEY PADULA, and the attorney for the defendant, David Garvin, Esq., mutually agree as follows:

**A. Particularized Terms**

1. Counts Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to defraud the Internal Revenue Service ("IRS") and to commit bank fraud (18 U.S.C. § 1344(1)), in violation of 18 U.S.C. § 371.

2. Maximum Penalties

Count One carries a maximum term of imprisonment of 5 years; a fine of $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater; a maximum term of supervised release of 3 years; and a

special assessment of $100, said special assessment to be due on the date of sentencing.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3. <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

(1) Two or more people in some way agreed to try to accomplish a shared and unlawful plan, that is, to defraud the United States and to commit bank fraud;

(2) the defendant knew the unlawful purpose of the plan and willfully joined in it;

(3) during the conspiracy, the defendant knowingly engaged in at least one overt act with the purpose of carrying out or accomplishing some object of the conspiracy.

4. <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida and the Tax Division agree not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office and the Tax Division at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Sentencing Guidelines Provisions

In accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the defendant will recommend to the Court that the following provisions of the Sentencing Guidelines apply:

Conspiracy to Defraud the Internal Revenue Service

a. Pursuant to U.S.S.G. §2T4.1(H), the base offense level is 20 because the tax loss is more than $550,000 but less than $1,500,000; and

b. Pursuant to U.S.S.G. §2T1.1(b)(2), a two-level enhancement applies because the offense involved sophisticated means.

Conspiracy to Commit Bank Fraud

c. Pursuant to U.S.S.G. §2B1.1(a)(2) and §2B1.1(b)(1)(H), the base offense level is 20 because the fraud loss is more than $550,000 but less than $1,500,000; and

d. Pursuant to U.S.S.G. §2B1.1(b)(10)(C), a two-level enhancement applies because the offense involved sophisticated means.

Multiple Counts

e. Pursuant to U.S.S.G. §1B1.2(d), "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Because the offense levels for both objects of the conspiracy are equally serious, two levels are added to the offense level pursuant to U.S.S.G. §3D1.4.

The government and the defendant agree that no other offense characteristics will be raised or are in dispute. The government and the defendant will be free to argue to the Court for or against the consideration of any sentencing factor pursuant to 18 U.S.C. § 3553. The United States agrees to recommend a sentence at the low end of the Guidelines. This recommendation is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Restitution to Bank of America and the Internal Revenue Service

The defendant agrees to the entry of a restitution order pursuant to 18 U.S.C. § 3663A.

At this time, the Government is aware that the following victims have suffered the following losses:

A. Bank of America: $739,459.90

B. IRS: $728,609

The defendant agrees that the total amount of restitution reflected in this agreement results from defendant's fraudulent conduct.

The total amount of restitution to the IRS consists of the following: $415,448 for tax year 2012 and $313,161 for tax year 2013. The defendant agrees to pay restitution by making payments in accordance with a schedule set by the Court.

The defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that the Court orders him to pay as restitution. The defendant also agrees to sign IRS Form 8821, "Tax Information Authorization." The defendant agrees not to file any claim for refund of taxes represented by any amount of restitution paid pursuant to this agreement. The parties understand that the defendant will receive proper credit for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties, or interest due from the defendant for the time periods covered by this agreement or any other time period.

The defendant agrees that he is liable for the fraud penalty under 26 U.S.C. §§ 6663 or 6651(f) on the amount to be credited to tax set forth above.

The defendant agrees to the immediate assessment of the fraud penalty on the amount to be credited to tax set forth above and agrees that, in order to enable the IRS to make an immediate assessment of the fraud penalty, the IRS form he agreed to sign as set forth above will include the appropriate amount of the fraud penalty. The defendant agrees not to challenge or dispute any fraud penalties on the amount to be credited to tax set forth above.

If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a payment schedule in this case nor the defendant's timely payments according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

The defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period. The defendant understands that he is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by

incomplete or inaccurate information, unless and until any payment is actually received by the IRS and identified by it as pertaining to his particular liability. The defendant agrees that, unless the Director of the Administrative Office of the United States Courts directs him otherwise, all payments made pursuant to the Court's restitution order are to be sent only to the Clerk of the Court at the following address:

Clerk, U.S. District Court
2110 First Street
Ft. Myers, Florida 33901

With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

i. The defendant's name and Social Security number;
ii. The District Court docket number assigned to this case;
iii. Tax year(s) for which restitution has been ordered; and
iv. A statement that the payment is being submitted pursuant to the District Court's restitution order.

The defendant agrees to include a request that the Clerk of the Court send the information, along with the defendant's payments, to the appropriate office of the IRS. The defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

IRS – RAC
Attn: Mail Stop 6261, Restitution
333 West Pershing Avenue
Kansas City, MO 64108

7. Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot, and will not, challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Taxes and Penalties - Payment and Cooperation

The defendant agrees to pay all taxes, interest, and penalties found to be lawfully owed and due to the IRS for the years 2012 and 2013, and to

cooperate with and provide to the IRS any documentation necessary for a correct computation of all taxes due and owing for those years, and further agrees that the Court may make this term a condition of any sentence of probation or supervised release.

The defendant agrees that nothing in this agreement shall preclude or bar the IRS or the Department of the Treasury from the assessment or collection of any additional tax liability, including interest and penalties, or any other penalties determined to be due and owing for tax years 2012 and 2013.

9. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters

a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.

The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the

background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial

affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

5. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not

such decision is consistent with the government's recommendations contained herein.

6. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; (c) the ground that the sentence violates the Eighth Amendment to the Constitution; or (d) the ground of ineffective assistance of counsel; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7. Middle District of Florida/Tax Division Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the Tax Division and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10. Factual Basis

Defendant is pleading guilty because defendant is, in fact, guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS RELATED TO THE CONSPIRACY TO DEFRAUD THE IRS

Between 2012 and 2014, the defendant was a resident of Charlotte County, Florida. He was the sole shareholder of a marketing and information technology business named Demandblox, Inc. ("Demandblox"). Demandblox reported its income and expenses on an U.S. Income Tax Returns for an S Corporation (Form 1120S). The defendant conspired with others, both known and unknown, to move funds from his business, Demandblox, to financial accounts in Belize, the Cayman Islands, and elsewhere, in order to defraud the

United States in the ascertainment and assessment of income taxes and other reporting requirements. The defendant created two offshore companies in Belize: Intellectual Property Partners, Inc. ("IPPI") and Latin American Labor Outsourcing, Inc. ("LALO"). He opened and controlled bank accounts in the names of these two entities at Heritage International Bank & Trust Limited ("Heritage Bank"), a financial institution located in Belize. The IPPI bank account was opened in January 2012 with a wire transfer of $599,990 from the Demandblox bank account at Bank of America. The LALO bank account was opened in March 2013 with a wire transfer of $11,965 from the Demandblox bank account at Bank of America. The defendant caused periodic payments to be sent from Demandblox to the bank accounts at Heritage Bank. These payments were falsely recorded in Demandblox's corporate books as intellectual property rights or royalty fees and then falsely deducted as legitimate business expenses on Demandblox's 2012 and 2013 Forms 1120S. In 2012 and 2013, a total of $2,490,688 was deposited into the two Belize bank accounts.

On Demandblox's 2012 Form 1120S filed with the IRS, $1,206,562 was falsely deducted as intellectual property rights or royalty fee expenses; in 2013, the amount was $805,760. These false expenses significantly reduced the income of Demandblox. The defendant willfully filed with the IRS a false U.S. Individual Income Tax Return (Form 1040) for 2012 that reported income from Demandblox of approximately $174,994, when it should have reported $1,381,556. The tax loss for 2012 resulting from this underreported income is

$415,448. The defendant willfully filed with the IRS a false Form 1040 for 2013 that reported income from Demandblox of approximately -$1,074, when it should have reported $804,686. The tax loss for 2013 resulting from this underreported income is $313,161.

The defendant used the funds in the offshore bank accounts he controlled to pay for personal expenses as well as to purchase significant personal assets. As stated in more detail below, in 2012, the defendant sent over $625,000 from the IPPI account in Belize to a nominee purchaser in order to fund the short sale of his own residence. On January 22, 2014, the defendant purchased a condominium in Miami, Florida, for $520,000. The condominium was purchased with funds from the LALO and IPPI bank accounts and was titled in the name of LALO. The defendant also used funds from the LALO and IPPI bank accounts to make significant improvements to this condominium.

The defendant conspired with investment advisors Joshua VanDyk and Eric St-Cyr at Clover Asset Management (CAM), an investment firm based in the Cayman Islands, to open and fund an investment account that he would control, but that would not be in his name. Heritage Bank had an account at CAM in its name; clients of Heritage Bank could get a subaccount through Heritage Bank at CAM which would not be in the name of the client but would be a numbered account. On December 27, 2013, the defendant caused $1,000,080 to be sent from the IPPI bank account in Belize to CAM to fund such a numbered account.

Citizens and residents of the United States, who had a financial interest in, or signature authority over, a financial account in a foreign country were required to disclose the existence of such account on Schedule B, Part III, of their IRS Form 1040. In addition, citizens and residents of the United States, who had a financial interest in, or signature authority over, a financial account with an aggregate value of more than $10,000 during a particular year, were required to file with the United States Department of the Treasury a Report of Foreign Bank and Financial Accounts on Form TD F 90-21.1 ("the FBAR"). The FBAR for the applicable year was due by June 30th of the following year.

The defendant's return preparer, a certified public accountant, informed him of these obligations in engagement letters, and stated that "[f]or example, a corporate-owned foreign account would require filings by the corporation and by the individual corporate officers with signature authority. Failure to disclose the required information to the U.S. Department of Treasury may result in substantial civil and/or criminal penalties." The defendant signed numerous engagement letters, yet he failed to disclose his control of offshore bank accounts to his certified public accountant. The defendant did not report that he had a financial interest in financial accounts located in a foreign country on his Forms 1040 for tax years 2012 or 2013, and he failed to file any FBARs disclosing the accounts for calendar years 2012 and 2013.

FACTS RELATED TO THE CONSPIRACY TO COMMIT BANK FRAUD

The defendant conspired with a person whose initials are R.R. in a real estate transaction in which the defendant and R.R. entered into a fraudulent "short sale" transaction related to the defendant's residence in Port Charlotte, Florida. A "short sale" is a term used for a transaction requested by a homeowner allowing the sale of a distressed property for an amount less than what was owed to the mortgage lender. The defendant had a mortgage of approximately $1.5 million with Bank of America, and sought to enter in to a short sale transaction that would reduce or eliminate his mortgage debt. R.R. served as a nominee purchaser; the defendant provided the funds to purchase the property in the short sale transaction.

The defendant was not unable to pay his monthly mortgage payments. On February 15, 2012, Padula sent a letter to Bank of America in which he claimed to have financial hardship and that his "ability to repay this loan is non-existent." However, in January and February 2012, the defendant caused Demandblox to send over $740,000 to the IPPI bank account in Belize.

On May 2, 2012, the defendant signed a "Short Sale Purchase Contract Addendum" as the seller, in which he agreed that the property must be sold through an "arms-length" transaction; the Addendum defines "arms length" to mean that the parties are unrelated and that no party is a business associate of the seller. The Addendum also states that the parties agree that the seller will not be permitted to remain in the property after the execution of the short sale

transaction. The defendant and R.R. knowingly and willfully violated both of these conditions.

On November 15, 2012, the defendant signed a Form HUD-1, Settlement Statement, as the Seller. R.R. signed the document as the Borrower, and he agreed to provide $693,212.70 to the settlement agent. The funds that R.R. used to pay this amount were not his, but had been sent by the defendant from the IPPI bank account in Belize to R.R. The defendant did not move out of the property in Port Charlotte, Florida, after the execution of the short sale transaction.

On December 24, 2012, R.R. conveyed the property in Port Charlotte, Florida, back to the defendant by signing a warranty deed that transferred ownership of the property in Port Charlotte, Florida, to LALO for $1.

11. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

12. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 13TH day of FEBRUARY 2017.

CASEY D. PADULA

DAVID M. GARVIN
Attorney for Defendant

A. LEE BENTLEY, III
United States Attorney

JESUS M. CASAS
Assistant United States Attorney
Chief, Fort Myers Division

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division

CARYN D. FINLEY
TODD A. ELLINWOOD
Assistant Chiefs
Department of Justice, Tax Division